FIRST NATIONAL BANK OF MERIDIAN v. W. C. STEPHENS ET AL.

Decided November 19, 1898.

**1. Release of Vendor's Lien—Agreement Construed to Have That Effect.**

Where the owner of land subject to a judgment foreclosing a vendor's lien made a sale of other land to the judgment creditor in consideration of which the creditor agreed to thereafter deliver to him a warranty deed of the first land, and the case involved conflicting evidence as to whether there was a further verbal agreement that the creditor should first sell under the judgment and then convey, the court properly charged that if, in making such sale to the creditor, it was the intention and purpose of the debtor to procure the transfer to himself at that time of the judgment of foreclosure, and that it was intended that the judgment should be extinguished, then a subsequent sale of the land under the judgment of foreclosure would not convey the title as against another creditor who held a subsequent mortgage lien thereon.

**2. Practice—Refusal of Requested Charges.**

The court's refusal to give requested charges to the jury on the ground that they were presented too late, will not be held reversible error where the argument in the case was concluded on Saturday evening, when the court read his charges to the jury, and the refused charges were not requested until Monday morning at the opening of court before the papers were delivered to the jury.

**3. Same—Brief Must Show the Charges Requested.**

Where requested charges are refused by the court and error is assigned to such refusal, the appellant's brief should contain the refused charges.

**4. Conspiracy to Defraud.**

A conspiracy between two persons to defraud necessarily involves knowledge or notice on the part of both of the fraudulent purpose.

APPEAL from Bosque. Tried below before RICHARD KIMBALL, Esq., Special Judge.

*Wm. M. Knight* and *Robertson & Robertson,* for appellant.

*Ward, Dillard & Ward,* for appellees.

TARLTON, CHIEF JUSTICE.—The appellant brought this suit against W. C. Stephens, W. T. Farr, and P. E. Schow & Bros. to recover certain indebtedness due by Stephens to it, and to foreclose the lien securing that indebtedness and evidenced by a deed of trust executed by Stephens upon lots 4, 5, and 6, in block 3, in the town of Clifton, Texas. The defendants other than Stephens were made parties as subsequent purchasers of the lots. A foreclosure was denied as against them, and hence this appeal.

Prior to August 3, 1895, P. E. Schow & Bros. were the owners of the property above described. They conveyed it to one T. P. Turner, subject to a vendor's lien for about $950. Turner subsequently conveyed the property to W. C. Stephens, subject to the same vendor's lien, though Stephens did not personally assume the payment of the debt. On August 3, 1895, Stephens executed the deed in trust in question to J. W. Rudasill, as trustee, for the benefit of the First National Bank of Meridian,

and to secure an indebtedness amounting at the date of this suit to $1255.48.

P. E. Schow & Bros. brought suit against T. P. Turner to foreclose their vendor's lien, making W. C. Stephens, the bank, and J. W. Rudasill parties defendant. On August 22, 1896, Schow Bros. recovered a judgment in the sum of $948.22 with 10 per cent interest from that date, and with a decree foreclosing their lien and ordering the sale of the property.

On August 27, 1896, W. C. Stephens and wife executed a deed conveying to P. E. Schow & Bros 366 acres of the Bridgeman survey in Bosque County, reciting a consideration of $1400 in cash and the assumption by P. E. Schow & Bros. of a note against the land amounting to $1050, with interest. On the same date Schow Bros. and W. C. Stephens entered into a written agreement whereby, upon condition that Stephens would deliver to Schow Bros. a warranty deed from himself and wife to 366 acres of land out of the Bridgeman survey, and on the further condition that Stephens should refund to Schow Bros. any sum of money which they should have to pay as interest to January 1, 1897, on a note of $1050 bearing upon the land, Schow Bros. agreed to execute and deliver to Stephens, on or before January 1, 1897, a warranty deed to the three lots above mentioned. That is to say, they agreed to deliver a warranty deed to lots 5 and 6, in the event of the execution of the deed to the 366 acres of land, and to deliver such a deed to lot No. 4, in the event that Stephens should pay said interest to January 1, 1897, on the note for $1050, or should refund to Schow Bros. any amount which they might be forced to pay as interest to January 1, 1897. They further agreed that, in the event of their failure to comply with their contract, they would as a penalty pay the sum of $150 to Stephens for each lot, provided that Stephens should have performed his part of the contract in every particular.

The contention of the appellant, finding support in some aspects of the evidence, is that the consideration for the deed executed by Stephens and wife to Schow Bros. was the assumption of the note for $1050 and interest bearing upon the Bridgeman land and the release by Schow Bros. of the vendor's lien on the lots in question, and that the transaction involved at the date of the agreement of August 27, 1896, an immediate discharge of the lien, or a transaction whereby W. C. Stephens then became the owner of the judgment foreclosing the lien.

On the other hand, the opposing contention of the appellees, finding support in other aspects of the evidence, is that it was verbally agreed between these parties at the date of the written instruments above mentioned that the method adopted for the putting of the title by warranty deed to the three lots in Stephens should be as follows: Schow Bros. would have an order of sale issued upon their decree of foreclosure, and would at the sale buy in the property, and thereafter execute the conveyances to Stephens in accordance with their written agreement, crediting

the amount of their bid on their judgment against Turner, and thereafter transfer to Stephens the balance of their judgment against Turner.

Before this plan was consummated, W. C. Stephens and wife incurred an indebtedness of $353 for merchandise purchased from P. E. Schow & Bros. Being unable to pay this amount, accruing up to December 15, 1896, it was agreed between Stephens and Schow Bros. that the agreement to execute a conveyance of the lots should be canceled, and that in lieu thereof Schow Bros. would give Stephens a credit upon his account of $300.

Accordingly, on October 12, 1896, Schow Bros. secured an order of sale on their decree of foreclosure, and a sheriff's sale was accordingly had in December, 1896, at which Schow Bros. became the purchasers of the three lots, the sheriff executing to them on December 15th a receipt for $150, as the amount of the bid to be credited on the Turner judgment. He had previously, on December 7, 1896, executed a sheriff's deed conveying the lots to Schow Bros.

On March 15, 1897, Schow Bros. conveyed lots 4 and 5 to W. T. Farr, one of the defendants herein, a bachelor, and brother-in-law of Stephens, residing with him. Schow Bros. are still the owners of lot No. 6, though Stephens occupies it. The consideration in the deed to Farr is $50 cash, a note for $50 due August 1, 1897, and one for $100 due October 1, 1898. On March 25, 1897, Schow Bros. executed to W. C. Stephens a transfer of the judgment against Turner, reciting a consideration of $948.22.

The verdict of the jury must be regarded as establishing the truth of the appellees' construction of the facts, and we accordingly so find.

*Conclusions of Law.*—1. In response to the contention of the appellant, the court's general charge contained the following instruction: "If you believe from the evidence that it was the intention and purpose of W. C. Stephens in conveying to P. E. Schow & Bros. 366 acres of land by the deed of August 27, 1896, which has been admitted in evidence, and in entering the contract or contracts on the same date which have been proven before you, to procure the transfer to himself at that time of the decree of foreclosure above mentioned, and that by such transfer of said judgment at that time it was intended that the lien foreclosed in said decree should be extinguished, then you will find for plaintiff a foreclosure of the lien of said trust deed as prayed for in this suit against all the defendants."

The court, in this connection, also granted the second special instruction requested by the appellant: "Although you may believe from the evidence that Stephens did not become the absolute owner of the judgment in case of Schow Bros. v. Turner by executing and delivering his deed on the 27th of August, 1896, yet if you believe from the evidence that the execution and delivery of the deed was made for the purpose of paying off and extinguishing the lien of the judgment on the three lots,

then you are instructed that no order of sale subsequently issued and levied upon said lots could pass a title thereto."

We are of opinion that by the foregoing instructions the plaintiff secured the benefit of the proposition urged by it asserting ownership in Stephens of the foreclosure decree, or in the alternative, a release of the vendor's lien thereby adjudged. It seems quite manifest to us that these instructions would have entitled the plaintiff to a verdict against all the defendants, had the jury not rejected its construction of the testimony. The first, second, fifth, and sixth assignments of error are thus overruled.

2. The third and fourth assignments of error complain of the refusal of the court to grant special charges numbers 5 and 6. A bill of exceptions informs us that the argument in the cause was concluded about half-past 6 o'clock on Saturday evening; that thereupon the court read to the jury its charge and special instructions 2 and 3 requested by the plaintiff; that thereafter the jury were discharged until Monday morning, when, at the opening of the court, before the papers were delivered to the jury, the plaintiff requested these special charges 5 and 6, which the court declined to read to the jury, on the ground that the instructions were presented too late. We are not prepared to condemn this action of the court as other than the exercise of a sound discretion. Having read the general charge on the Saturday before, it might have been improper that the court should on the succeeding Monday read these special instructions requested by the plaintiff, unless, indeed, it also should read again its general charge. Such a proceeding might have tended to give undue emphasis to the special instructions last requested.

But apart from this we are unable to sustain these assignments. The brief does not set out the charges 5 and 6. A statement contained in the brief suggests that a certain proposition was sent out in special charge No. 5, but this proposition is embodied in special charge No. 2 granted at the request of the plaintiff. Hence the third and fourth assignments of error are overruled.

3. The plaintiff in its pleadings charges, in effect, a conspiracy between the defendant Stephens and the defendants Schow Bros. in the matter of procuring the order of sale under the foreclosure decree above referred to, for the purpose of fraudulently depriving the plaintiff of its lien. The charge of the court complained of in the twelfth assignment of error has reference to the issue thus raised by the averments of the plaintiff. We find no merit in this assignment. We deem it unnecessary to set out the charge. It is complained of on the ground that it required notice or knowledge on the part of Schow Bros. of the fraudulent purpose of Stephens, and such notice or knowledge was involved in the allegations of the plaintiff.

The judgment is in all things affirmed.

*Affirmed.*

Writ of error refused.